STATE OF VERMONT
ENVIRONMENTAL COURT

}
In re Appeal of: }
  P & H Senesac, Inc. }      Docket Nos. 216-11-98 Vtec
}
}

## Decision and Order

Appellant-Applicant P & H Senesac, Inc. (Senesac) appeals from a decision of the Planning Commission of the Town of Georgia denying site plan approval for the relocation of its septic and sewer service business from Milton to the former Griswold property in Georgia. Appellant-Applicant P & H Senesac, Inc. is represented by Robert C. Roesler, Esq.; the Town of Georgia is represented by Amanda Lafferty, Esq. An additional party, Mr. Karl Zurn did not seek to enter an appearance until after the hearing; his motion to reopen the hearing was denied but he was given the opportunity to file requests for findings and a memorandum in the matter, based on the issues raised by Appellant and the evidence submitted at the hearing.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. Upon consideration of the stipulation of facts, the evidence and arguments at trial, and such memoranda[1] as have been filed by the parties, the Court finds and concludes as follows.

Appellant-Applicant P & H Senesac, Inc. seeks site plan approval of a dispatching and maintenance facility for its septic and sewage trucks and its dewatering and other equipment. Appellant-Applicant is in the business of providing service to residential, commercial, industrial and municipal sewer systems. The company pumps out tanks, augers and cleans sewer lines, dewaters sewage sludge at industrial and municipal sites, and transports septage and sewage sludge to treatment facilities for disposal. The dewatering equipment is completely cleaned and flushed at the applicable municipal

---

[1] Neither Appellant-Applicant nor the Town provided requests for findings in this matter.

treatment plant. Appellant-Applicant also transport byproducts from the Wyeth Nutritionals plant to the City of Burlington composting facility.

Appellant-Applicant owns sludge and sewage processing and transportation equipment, including three vacuum trucks, a tractor-trailer, and a municipal waste dump truck. Two of the vacuum trucks and the tractor-trailer carry septic waste. The vacuum trucks each hold approximately 2,500 gallons and the tractor-trailer holds 7,000 gallons. During normal business hours the tank trucks and, if used, the tractor-trailer go directly to a municipal sewage treatment plant to discharge their contents. However, if a truck is full at the end of the business day it is not emptied until the sewage treatment plant opens the next business day. The City of Burlington sewage treatment plant is open seven days a week.

In the past, Appellant-Applicant stored its trucks at the Milton home of the President of the company. Appellant-Applicant might have a loaded truck on site once overnight on a weekday and once on a weekend.

Appellant-Applicant operates its business with seven employees who are reliable. The most highly trained employee is Paul Senesac, III, who is on call 24-hours a day unless he is out of state. Mr. Senesac holds a wastewater treatment plant operator's license. Appellant-Applicant presented a four sentence emergency management plan (in Exhibit 5), but did not demonstrate that his employees have been trained to carry out these procedures in the event of his absence, or that the Georgia Health Officer is prepared to offer emergency assistance, or whether there are any state programs or state personnel who should be contacted in the event of a spill.

Appellant-Applicant proposes to renovate the former S.T. Griswold property, adjacent and to the west of the Georgia Dairy Industrial Park, for use as a maintenance and storage terminal for its trucks and equipment, and as a dispatching office. Appellant-Applicant's buildings are 800 to 1000 feet from the property line and about 1300 feet from the Wyeth Nutritionals site in the Georgia Dairy Industrial Park. The property line is 200 feet from the adjacent neighbor Mr. Karl Zurn's business, MED Associates, which manufactures medical instrumentation certified by the FDA. Both Mr. Zurn's products and those manufactured by Wyeth Nutritionals must be manufactured with a high degree of actual and perceived cleanliness. The water treatment plant supplying water to the Georgia Dairy Industrial Park is also located within the Park.

2

Appellant-Applicant's site was formerly used for a concrete ready-mix plant, and was leased by the then-owner to a logger for storage of his logging trucks and equipment. The property contains a large maintenance building and garage with bays capable of handling up to three trucks.

Appellant-Applicant proposes to store all equipment, including the portable dewatering equipment, on site. Appellant-Applicant does not propose to wash out the inside of any of the trucks on site, but may wash the outside of the trucks. Cleaned and emptied trucks may be parked outside. If a full truck is on site overnight, Appellant-Applicant proposes to park it in the garage over an existing maintenance pit for containment of any waste, should the truck leak catastrophically. The maintenance pit is 40 feet long, four feet wide, and five feet deep, or 800 cubic feet, with a capacity to hold 5,984.4 gallons of liquid. The pit has been tested and does not leak. The capacity of the maintenance pit would contain the contents of a leaking pump truck but not the contents of the tractor-trailer's tank.

Appellant-Applicant and the Town stipulated that the site plan prepared by Shiretown Engineering, Land Planning and Surveying, by David M. Ring, Registered Professional Engineer, shows an accurate depiction of the property owned by Appellant-Applicant and depicts the location of the paving, the retention ponds, the buildings and the land contours. That plan was based on an earlier set of plans prepared for the concrete plant by another firm. The paving had been sloped to drain the wash water from the concrete trucks towards the retention or percolation ponds. The capacity of the ponds is 30,000 gallons if they are excavated back to their original design. If a catastrophic outside leak or failure of the trucks were to occur, and septage were to reach the percolation ponds, the percolation rate is slow enough so that it could be pumped out of the ponds within the first 24 hours, and only a negligible amount would leach into the soil from the ponds in that time.

However, the drainage swales have become blocked with silt over a period of years, and Appellant-Applicant proposes to excavate drainage swales, remove an area of concrete lining of the swales, and to seed and mulch them. If this is done, any minor runoff will be absorbed and treated before reaching groundwater, which is approximately one to six feet below the land surface, ranging from the wetland areas to the replacement area, respectively.

3

The site plan does not accurately represent the drainage swale proposal, and if it is to be approved, Appellant-Applicant will have to submit a site plan accurately reflecting the proposal as made to the court.

The proposed operation will meet the performance standards of §1109.1 if operated in accordance with the conditions of this decision. No vibration or glare in excess of the standards is expected to be produced, nor will the facility interfere with the use of renewable energy resources or cause a fire, explosion or safety hazard.

Noise at the facility will be emitted by the truck and equipment engines. The noisiest one was tested and does not emit noise in excess of 70 decibels at the property line. The potential source of smoke or noxious gases is the heating furnace and the truck engines. Neither the trucks nor the furnace will produce smoke in excess of Ringlemann Chart No. 2, and they will be maintained so as not to produce excess exhaust gases.

Dust may be created on site by the passage of trucks over the unpaved areas of the site. Appellant-Applicant has not demonstrated how the dust control performance standard, §1109.1(c), will be met.

Negligible odors or airborne pathogens or other unsafe or unhealthy conditions are not expected to be produced at the facility as the trucks and tanker will not be pumped out, nor their interiors washed out, on the premises, and containment of any spill or failure of a truck tank is addressed by permitting overnight storage only inside the garage and over the maintenance pit, and by the immediate availability of lime to treat any residue.

The Court also notes that the facility is responsible to meet the performance standards of §1109.1 during its operation, even without regard to this decision and order.

Based on the foregoing findings and conclusions, it is hereby ORDERED and ADJUDGED that site plan approval is GRANTED, subject to the following conditions, and subject to any motions to amend this order after the plans required by Conditions 1, 3, and 5 are filed:

1.      Appellant-Applicant shall file with this Court and with the Planning Commission a revised site plan reflecting the proposal for site design of the swale or swales as proposed at the hearing. No further action under this order shall be undertaken until the revised site plan is filed.

2.      The concrete in the swale shall be removed and the swale shall be excavated,

4

seeded and mulched to the contours shown on the revised site plan. Until the swale is fully vegetated, no trucks containing septage shall come onto the site, and no trucks shall be washed on site.

3.     Appellant-Applicant shall file with this Court and with the Planning Commission an emergency management plan designating the individuals responsible for emergency management in Mr. Senesac's absence, the municipal and state entities and numbers to be reached in the event of a spill or other emergency, certification that all present employees have received training in those emergency procedures, and a procedure for any new employees to receive training in those emergency procedures. Until the emergency management plan has been filed and all present employees have been trained in its procedures, no trucks containing septage shall come onto the site.

4.     One ton of hydrated lime shall be stored on site in a location covered sufficiently to prevent the lime from becoming airborne and blowing as dust over or off the site. Unless the lime is on site, no trucks containing septage shall be stored on site.

5.     Appellant-Applicant shall file with this Court and with the Planning Commission a dust control plan for the unpaved and unvegetated areas of the site and for the storage of the hydrated lime. Such plan may include, but need not be limited to, the placement of gravel, stone, paving, or vegetation as may be appropriate. Any chemical, other than water, proposed to be applied for dust control may require additional permits. No trucks shall be driven on any dirt surface until the dust control plan has been filed.

6.     No trucks shall be stored outdoors on the property except empty. Specifically, the tractor-trailer's tank trailer shall not be stored on the property with any contents at any time. Up to two trucks with a combined capacity of not more than 5,500 gallons may be stored with their contents overnight within the garage, and so that their contents would flow into the maintenance pit if any breach occurred. If a truck is stored with contents over the maintenance pit, its contents shall be disposed of at a municipal sewage treatment plan as soon as possible  no later than the next business day.

7.     The exteriors of trucks may be washed on site only in the area of the former 'wash racks' and only when the ground is not in a frozen condition, so that the retention ponds are able to function as designed.

8.     All engines, furnaces and other sources of combustion shall be maintained in good order so that they do not produce excess exhaust gases.

5

9.      Appellant-Applicant shall obtain and comply with all conditions of any other state and municipal permits required for the construction or operation of this project.



        Dated at Barre, Vermont, this 20th day of April, 2000.


____

_____

                                        Merideth Wright
                                        Environmental Judge